UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS COLON, | * * * |
| Petitioner, | * * |
| v. | * Civil Action No. 21-cv-10092-ADB * |
| MAURA T. HEALEY, | * * |
| Respondent. | * * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

In June 2012, an Essex County jury convicted Petitioner Dennis Colon of first degree murder, armed burglary, and assault and battery by means of a dangerous weapon. He was subsequently sentenced to life without the possibility of parole. On January 19, 2021, after the Massachusetts Supreme Judicial Court ("SJC") affirmed both his conviction and the trial court's denial of his motion for a new trial, Commonwealth v. Colon, 133 N.E.3d 306, 322 (Mass. 2019), Colon petitioned Respondent Maura T. Healey ("Respondent") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, [ECF No. 1].[1] For the reasons set forth below, Colon's petition is DENIED.

---

[1] As Respondent notes, [ECF No. 11 at 1 n.1], as the Massachusetts Attorney General, she is not a proper respondent. See Rules Governing Section 2254 Cases, R. 2(a) ("If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent *the state officer who has custody*." (emphasis added)). The Court will not, however, require Colon to substitute a proper respondent because, for the reasons that follow, his petition is without merit.

1

I.  **FACTUAL BACKGROUND**

The SJC provided a factual summary of the case, which the Court adopts in relevant part below.[2]

A.  **The Shooting**[3]

At approximately 4:30 A.M. on May 22, 2009, intruders broke into the victim's house while the victim and his girlfriend, Tori,[4] were asleep. Tori awoke to find the victim sitting up in bed and two men standing at the edge of the bed, pointing guns at her and the victim. The men wore sunglasses and hats that obscured their faces. Although Tori did not recognize either man, she thought that one of them might have been a man she knew as "PS," to whom the victim twice had sold marijuana. Tori believed the other man was approximately five feet, six inches tall, roughly the same height as [Colon].

Tori screamed, "Please, don't shoot, don't shoot." The victim could not see what was happening, as he was blind, and began waving his hands. A gun went off, and the victim fell on top of Tori. The men left. Tori testified that she saw the two men for a total of approximately five minutes.

A projectile from a .380 semiautomatic weapon had entered the victim's head on the left side and fragmented in at least two different directions. The victim was transported to a hospital, where he was pronounced dead at 11:25 P.M. The cause

---

[2] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). This presumption applies with equal force to findings of fact by state trial and appellate courts. See Logan v. Gelb, 790 F.3d 65, 68 (1st Cir. 2015) (per curiam); RaShad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002). The facts can be rebutted only with "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1); RaShad, 300 F.3d at 35.

[3] The SJC's footnote states:

The facts in this and the following sections are derived from a combination of (1) trial testimony; (2) the trial judge's voir dire of [Colon's] girlfriend, before the jury were sworn, in relation to motions to exclude her testimony; (3) an evidentiary hearing held in conjunction with [Colon's] motion for a new trial; and (4) undisputed documents in the record.

Colon, 133 N.E.3d at 311 n.2.

[4] The SJC's footnote states: "A pseudonym." Colon, 133 N.E.3d at 311 n.3. For clarity, the Court will adopt the SJC's use of the "Tori" pseudonym.

of death was a single gunshot wound to the head.  A portion of the bullet passed through the victim's head and into Tori's chin, breaking her jaw.  Two permanent metal plates had to be installed in Tori's jaw to hold the jaw together.

Colon, 133 N.E.3d at 311.

### B.     The Interrogations

On June 22, 2009, while Lawrence police were investigating a separate incident involving a burglary, they encountered [Colon] and found a Beretta firearm on his person.[5]  [Colon] was arrested for possession of a firearm without a license, and was transported to the Lawrence police station.

That evening, [Colon] was interrogated at the Lawrence police station in two separate interviews that took place approximately one hour apart.  He said nothing inculpatory related to this offense during these two interviews, and no testimony was introduced at trial concerning [Colon's] statements on the evening of his arrest.

During the first interview, [Colon] asked detectives if he "could see" his girlfriend, Giana.[6]  At that point, Giana was at the police station in a different room.  Giana, who was four months pregnant with twins, had come to the police station voluntarily to provide police information that she thought would help [Colon], concerning the gun that police had found on his person.  In response to [Colon's] request, one detective said, "[A]ctually she's not going to be able to come down.  All right?  But I'll let you call her.  All right?"

According to a police report, while [Colon] was in the booking room after his first interview, a detective asked a fellow officer to tell Giana, who was upstairs, to call the officer's cellular telephone.  When Giana called, the officer handed the telephone to [Colon], who spoke with Giana.  Subsequently, [Colon] spoke with police for ten minutes, and the interview then concluded at 5:41 P.M.

The following day, on June 23, 2009, while [Colon] was being held in a cell at the Lawrence Division of the District Court Department, he requested to speak with a police officer whom he recognized.  At approximately 9:30 A.M., [Colon] was interviewed by two officers.  According to police testimony, [Colon] waived his Miranda rights, consented to the interview being recorded, and waived his right to prompt arraignment.  [Colon] signed forms associated with each of these waivers, as well as his consent to the recording.  The period during the issuance of the Miranda warnings and the receipt of [Colon's] waivers, however, was not recorded.

---

[5] The SJC's footnote states: "The caliber of the Beretta is not clear from the record."  Colon, 133 N.E.3d at 311 n.4.

[6] The SJC's footnote states: "A pseudonym."  Colon, 133 N.E.3d at 311 n.5.  For clarity, the Court will also adopt the SJC's use of the "Giana" pseudonym.

3

In this interview, [Colon] told police that he had participated in the break-in that led to the victim's death. [Colon] admitted to having broken into the victim's apartment, along with individuals he identified as "Limbe," "Smokey," "PS," and "Dezi," with the intent to steal money and marijuana. [Colon] said that he saw a dog in the apartment;[7] as he was afraid of dogs, he stayed in the hallway to serve as the lookout. He concluded by saying that someone other than he had fired a shot inside the apartment from a .380 weapon.

In January 2011, [Colon's] first attorney[8] moved to suppress [Colon's] inculpatory statement to police.[9] The motion was denied after an evidentiary hearing. In his written findings of fact and rulings of law, the motion judge determined that [Colon] had been questioned by police at the Lawrence police headquarters on June 22, 2009, shortly after his arrest, for approximately thirty to forty-five minutes. The judge found that, the following day, [Colon] initiated contact with police, while being held in the cell block area of the District Court in Lawrence. An officer read [Colon] Miranda warnings before turning on a tape recorder. [Colon] was "eager" to speak with police. The officer described him as "clear-headed, and not under the influence of alcohol, drugs, or mental illness." The judge determined that the emotion [Colon] displayed was "appropriate to the situation," and concluded that [his] "statements were voluntary and preceded by adequate Miranda warnings."[10]

---

[7] The SJC's footnote states: "The victim and his girlfriend owned a dog, which was in the bedroom at the time of the incident." Colon, 133 N.E.3d at 312 n.6.

[8] The SJC's footnote states: "Prior to trial, [Colon's] first counsel was replaced by a second counsel, who represented [him] throughout the trial." Colon, 133 N.E.3d at 312 n.7.

[9] The SJC's footnote states:

> The motion to suppress asserted, among other grounds, that [Colon] did not knowingly, intelligently, and voluntarily waive his right to remain silent or to have an attorney present during questioning on June 23, 2009; [Colon] did not make any statement voluntarily; and any consent was not voluntarily obtained. The motion did not explicitly reference [Colon's] concern for his girlfriend.

Colon, 133 N.E.3d at 312 n.8.

[10] The SJC's footnote states:

> The judge observed, "The failure to record the beginning of questioning is an issue for the trial judge, and does not provoke any concerns by this court about the voluntariness of the statements or the adequacy of the Miranda warnings, given [Colon's] obvious desire to speak to police as shown by the audio recording."

Colon, 133 N.E.3d at 313 n.9.

4

[Colon's] trial counsel filed a motion for reconsideration, which was denied. After trial began about one week later, counsel moved in limine to exclude [Colon's] statement of June 23, 2009. The trial judge deferred to the motion judge's ruling and denied the motion.

Colon, 133 N.E.3d at 311–13 (some alterations in original).

**C.     The Trial**

Before the jury were sworn, trial counsel moved to exclude testimony by [Colon's] girlfriend, Giana, with respect to statements she made at the Lawrence police station on June 22, 2009. The Commonwealth had intended to call Giana as a corroborating witness, and possibly as a witness to show intent for the underlying felony. Defense counsel explained that Giana sought to claim a privilege under the Fifth Amendment to the United States Constitution, because information that she gave police that inculpated [Colon] purportedly was false. Counsel also moved to exclude Giana's statements on the ground of asserted police coercion.

The judge conducted a voir dire of Giana. Giana said that, while she was being questioned, a police officer threatened her by telling her that if she did not inculpate [Colon], she would go to prison and give birth there, and that she would never see her twins again. Giana's son, who had come to the police station separately, was brought into a room where he met briefly with his mother, who was crying.

The judge determined that "the police may have played upon [Giana's] emotions – to a certain extent – but I do not find that all of [Giana's] testimony is credible." The judge explained that Giana had provided a "demonstratively false" statement that she had been given Miranda warnings only as she was walking out the door. The judge also noted that the police report describing Giana's interview "doesn't even go into a fair amount of what she claims was asked her at the police station." The judge denied the motion to exclude Giana's statements. He observed that, "plainly, the defense is entitled to bring these matters up to the jury," and left "it to the Commonwealth as to whether they want to open up this can of worms before the jury."[11]  Neither the Commonwealth nor the defense ultimately called Giana to

---

[11] The SJC's footnote states:

Overall, the judge did "not find that the Lawrence [p]olice had been sufficiently shown to have so invaded [Giana's] personal security or in a way that would likely produce false testimony." The judge's findings on this point, however, are not entirely clear. The previous day, the judge had ruled that if Giana testified at trial that she had relayed false statements to the police, she would have no need to invoke the Fifth Amendment because "her testimony . . . would indicate that she did not willfully provide the false information, if indeed, it was false. If it is false, it was done due to intimidation, coercion, not willful activity on her part."

> testify at trial. As a result, any information inculpatory to [Colon] that Giana might have provided to police was not presented to the jury.
>
> [Colon's] statements from the morning of June 23, 2009, were the heart of the Commonwealth's case. In addition, the Commonwealth presented testimony of an inmate, Alvin Rivera, who testified against [Colon] pursuant to a cooperation agreement. Rivera's testimony suggested that [Colon] actually shot the victim, rather than serving as lookout.
>
> Rivera testified that, while detained at the Middleton house of correction in the summer of 2009, [Colon] told him that [Colon] and others, known as "Smokey," "Limbe," and "PS," went to the victim's house on the night of the shooting in search of marijuana and money. Rivera testified that Smokey handed [Colon] a .380 weapon and PS a Beretta. According to Rivera, [Colon] told him that Smokey stood in the hallway as lookout while [Colon] and PS went into the apartment and made their way to the bedroom where the victim and Tori were sleeping. Rivera testified that, when [Colon] noticed the victim moving, [Colon] got "nervous" and fired a single shot before running from the apartment. [Colon] told Rivera that he had sold the .380 but not the Beretta. [Colon] said that if anyone questioned him about the shooting, he would say that he had been the person who stood outside as a lookout. [Colon] told Rivera that [Colon] and three other individuals previously had broken into the victim's apartment, and had stolen marijuana.
>
> [Colon] was convicted of all charges. Because the felony-murder conviction was predicated on the burglary charge, that charge was placed on file. [Colon's] timely appeal was entered in [the SJC] in January 2014.

Colon, 133 N.E.3d at 313–14 (some alterations in original).

### D.     The Motion for a New Trial

Approximately ten months later, [Colon] filed a motion for a new trial, and his appeal in [the SJC] was stayed. In his motion, [Colon] argued that he had received ineffective assistance of counsel as a result of both of his attorneys' failure adequately to investigate Giana's purported role in, and effect on, the police interrogation and [Colon's] statements to police, as well as both attorneys' failure to mention [Colon's] concern for Giana in challenging the voluntariness of [Colon's] waivers of his Miranda rights and subsequent statements to police . . . .

[Colon] argued that, during his interrogation on the night of his arrest, police officers orchestrated a "cell[ular] [tele]phone ruse" in which they instructed Giana to call him using a detective's cellular telephone. [Colon] asserted that he was "surprised" to hear Giana on the telephone. He said that, during this call, Giana told him about police threats to take away her children and charge her with murder.

---

Colon, 133 N.E.3d at 313 n.10 (alterations in original).

> Because of this call, [Colon] maintained, he told the officers whatever he thought they wanted to hear.
>
> The trial judge conducted a three-day evidentiary hearing on the motion for a new trial. Witnesses included [Colon's] two prior attorneys; five police officers; [Colon]; his girlfriend, Giana; and one of her sons.
>
> Ultimately, the judge denied the motion. The judge found that numerous "facts alleged by [Colon] never occurred." Specifically, the judge did "not credit, in the slightest, [Colon's] assertion that the Lawrence police created a 'cell phone ruse'" on June 22, 2009. The judge found that "[w]hile there is no doubt that [Colon] spoke briefly with [Giana] before he made his June 23rd statement to the police, that phone call conversation was brief and did not contain the sort of detailed description of police threats or coercion that [Colon] now claims." Accordingly, the judge concluded that "there was no basis to argue the phone call as one of the grounds for lack of voluntariness," and "[t]hus . . . no ineffective assistance of counsel."

Colon, 133 N.E.3d at 314–15 (citations omitted) (some alterations in original).

## II.   PROCEDURAL BACKGROUND

In June 2012, Colon was tried in Essex County Superior Court. See [ECF Nos. 7-3, 7-4, 7-5, 7-6, 7-7 (trial transcripts)]. The jury convicted him of first degree murder, armed burglary, and assault and battery by means of a dangerous weapon, Colon, 133 N.E.3d at 310 n.1, and he was sentenced to life without the possibility of parole, see [ECF No. 7-8 at 9–10 (transcript from sentencing)]. On October 22, 2019, the SJC affirmed both his conviction and the trial court's denial of his motion for a new trial. See Colon, 133 N.E.3d at 322.

On January 19, 2021, Colon filed his petition for a writ of habeas corpus, along with an accompanying brief. [ECF No. 1 (petition); ECF No. 1-1 (brief)]. Respondent opposed on May 28, 2021, [ECF No. 11], and Colon replied on July 27, 2021, [ECF No. 12].

## III.   LEGAL STANDARD

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the

7

> adjudication of the claim —
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> To be deemed contrary to clearly established federal law, a state court decision must announce[] a rule of law that directly contradicts existing Supreme Court precedent or . . . reach[] a different result than the Supreme Court on materially indistinguishable facts. An unreasonable application occurs when the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case. Federal habeas relief only provides a remedy for instances in which a state court unreasonably *applies* [the Supreme] Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.
>
> These standards ensure that federal habeas relief will be granted only in cases in which all fairminded jurists would agree that a final state court decision is at odds with the Supreme Court's existing precedents. One consequence of this rule is that a federal court sitting in habeas jurisdiction may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous. This is not to say that the AEDPA require[s] state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. The Supreme Court has recognized that even a general standard may be applied in an unreasonable manner.

Bebo v. Medeiros, 906 F.3d 129, 134 (1st Cir. 2018) (alterations in original) (internal citations and quotation marks omitted).

With regard to whether a factual determination was unreasonable, the Supreme Court has noted that "[t]he term 'unreasonable' is no doubt difficult to define." Wood v. Allen, 558 U.S. 290, 301 (2010) (alteration in original) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)). "It suffices to say, however, that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Id. "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . .

8

determination.'"  Id. (second alteration in original) (quoting Rice v. Collins, 546 U.S. 333, 341–42 (2006)).

"If [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 562 U.S. 86, 102 (2011).

**IV.    DISCUSSION**

Colon asserts two grounds for relief: (1) the SJC's decision rests on two unreasonable factual determinations, [ECF No. 1-1 at 7–10], and (2) the SJC erred by rejecting his ineffective assistance of counsel claim, [id. at 5–7].  The Court addresses each ground in turn.

**A.    Factual Determinations**

Colon identifies two purportedly unreasonable factual determinations.

First, he identifies the trial court's determination that, during their June 22, 2009 call, Giana did not tell Colon that she had been threatened by the police.  Although reasonable minds might disagree about how to weigh the evidence in the record, the trial court's factual finding, which was affirmed by the SJC, was not unreasonable.  See Wood, 558 U.S. at 301 (noting that even if reasonable minds might disagree, habeas relief is inappropriate unless the state court's factual determination is unreasonable).  As the SJC recognized, "[b]ecause the call itself was not recorded, the [trial] judge's factual determinations concerning the call rested largely on assessments of witness credibility."  Colon, 133 N.E.3d at 317.  In habeas proceedings, issues of witness credibility are "exactly the type of factual determinations to which [federal courts] defer."  Teti v. Bender, 507 F.3d 50, 59 (1st Cir. 2007); see also Caldwell v. Maloney, 159 F.3d 639, 650 (1st Cir. 1998) ("[A] federal habeas court has 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them,' and must 'more than simply disagree with the state court' in order to reach a different result." (quoting

Marshall v. Lonberger, 459 U.S. 422, 432–34 (1983))).  Here, the trial court considered testimony from the call's only two participants, Colon and Giana, and concluded that insofar as their testimony suggested that Giana communicated the alleged threats to Colon over the phone, that testimony was not credible.  See Colon, 133 N.E.3d at 317–18.  Given the deference due to a trial court's credibility determinations, and in light of other evidence in the record—including Giana's and Colon's demonstrably false testimony concerning other topics, Colon's trial counsel's testimony regarding his communications with Colon and Giana, and the testimony of the police officer present during the call—the state court's factual conclusion was not unreasonable.[12]

Second, Colon identifies the trial court's factual determination that the June 22, 2009 telephone call between Giana and Colon was not a police-orchestrated ruse.  [ECF No. 1-1 at 8–10].  As the SJC observed, however, the transcript of Colon's interrogation demonstrates that he asked to see Giana and was told that he would be permitted to speak with her on the phone.  See Colon, 133 N.E.3d at 317; [ECF No. 7-1 at 255].  Accordingly, the trial court's characterization of the call as the policer officers granting Colon's request, rather than a ruse, was not an unreasonable factual determination.[13]

---

[12] Colon argues that given the trial court's finding that "the police had inflicted enough 'intimidation [and] coercion' on [Giana] to prevent her from making willfully false or misleading statements," [ECF No. 1-1 at 8 (first alteration in original)], "it defies any belief that [Giana] would not have conveyed to . . . Colon in some form or fashion the threats that the police had just made to tear their family apart," [id.].  Contrary to Colon's assertion, it does not defy belief that Giana would not have communicated the alleged threats to Colon during their phone call.  Even assuming that the coercive tactics alleged by Giana were, in fact, used, there are plausible explanations as to why she might not have told Colon about them.  For one, the call was relatively short.  Additionally, it took place in a police station (presumably, in front of the allegedly coercive police officers).

[13] The police report that Colon cites to refute the trial court's finding, see [ECF No. 1-1 at 9], does not support his position.  Given that Colon was in police custody (and had likely had his

In sum, neither factual determination that Colon attacks was unreasonable.

### B.     Ineffective Assistance of Counsel

Colon's ineffective assistance of counsel claim is somewhat convoluted but seems to proceed on two fronts. First, he maintains that because the threats that police officers allegedly made to Giana on June 22, 2009—which he contends Giana communicated to him during their phone call—rendered Colon's June 23, 2009 confession involuntary (and therefore inadmissible), his trial counsel was constitutionally deficient for failing to (1) review materials related to his June 22, 2009 interrogations,[14] (2) investigate the circumstances surrounding the call, and (3) move to suppress Colon's June 23, 2009 confession based on the call. See [ECF No. 12 at 3–4]. Second, he asserts that, regardless of whether Giana actually told Colon that she had been threatened, Colon's trial counsel was constitutionally deficient for failing to present evidence regarding the June 22, 2009 call to the jury because that evidence would have created a reasonable probability that the jury would have found Colon's June 23, 2009 confession to be involuntary. [Id. at 7–8]. For the reasons below, neither argument is persuasive.

####       1.      Failure to Discover, Investigate, and Move to Suppress

The SJC ruled that although "it was poor performance for [Colon's] initial and successor counsel not to listen to the recordings of interrogations of his client by police, which each counsel had in his possession as part of mandated discovery," its "review of these recordings,

---

cellphone taken away from him), it is unsurprising that the police "orchestrated" the call insofar as they made the logistical arrangements necessary for Colon to speak with Giana. Nothing in the report, however, negates the fact that Colon requested an opportunity to "see" Giana and was told by an officer that a call would be set up for him. See [ECF No. 7-1 at 255]. Further, that Colon eventually confessed does not necessarily render the phone call a ruse designed to "place enough pressure on [him] to cause him to make incriminating statements." [ECF No. 1-1 at 9].

[14] Both the police report and the audio recordings from his interrogations note the existence of the call. See Colon, 133 N.E.3d at 315.

and the judge's findings about the call, however, le[]d [the SJC] to conclude that they were not likely to have made a difference in counsels' efforts to suppress [Colon's] confession on the following day." Colon, 133 N.E.3d at 316. Specifically, the SJC held that the trial court's finding that Giana did not tell Colon about the threats during their June 22, 2009 call was supported by the record. Id. at 317–18. If Colon was unaware of the alleged threats, the SJC reasoned, those threats could not have affected the voluntariness of his confession. Id. at 318. As discussed above, the Court has already decided that the factual determination undergirding the SJC's decision (i.e., that Giana did not tell Colon about the threats during their June 22, 2009 phone call) was reasonable. See supra Section IV.A. Against that backdrop, the SJC's decision regarding this aspect of Colon's ineffective assistance claim was sound.

        2.        Failure to Present Evidence to the Jury

Colon next argues that the SJC acted contrary to, or unreasonably applied, clearly established federal law when it rejected his ineffective assistance claim based on trial counsel's failure to present evidence regarding the June 22, 2009 call to the jury. See [ECF No. 1-1 at 7]. The SJC rejected this claim on the merits. See Colon, 133 N.E.3d at 318 ("[Colon] contends that he should receive a new trial because 'the call still would have been a real factor in the jury's voluntariness decision, had it been developed at trial.' We do not agree."). In doing so, the SJC applied the standard used by Massachusetts courts when a defendant has been convicted of first degree murder. Colon, 133 N.E.3d at 315–16. Under that standard, courts assess whether "there was error, and, if so, whether any such error 'was likely to have influenced the jury's conclusion.'" Id. (quoting Commonwealth v. Fulgiam, 73 N.E.3d 798, 809 (Mass. 2017)). It is well-settled that the standard used by the SJC is more favorable to defendants than the federal constitutional standard set forth in Strickland v. Washington. See Kirwan v. Spencer, 631 F.3d

582, 590 n.3 (1st Cir. 2011). Because the SJC applied a standard that was more favorable to Colon than the federal Strickland standard, the SJC clearly did not "announce[] a rule of law that directly contradicts existing Supreme Court precedent." Cronin v. Comm'r of Prob., 783 F.3d 47, 50 (1st Cir. 2015). Accordingly, Colon's only potentially meritorious arguments are that the SJC (1) reached a different result on materially indistinguishable facts or (2) unreasonably applied clearly established federal law. See Bebo, 906 F.3d at 134.

In support of his argument, Colon relies heavily on two Supreme Court cases, Andrus v. Texas and Williams v. Taylor, but neither supports his position.

In Andrus, the Supreme Court granted the prisoner's habeas petition and remanded the case because the Texas Court of Criminal Appeals failed to provide any explanation regarding the prejudice prong of the Strickland test. Andrus, 140 S. Ct. 1875, 1881 (2020) (noting that "the Court of Criminal Appeals concluded without elaboration that Andrus had" failed to meet his burden under Strickland); see also Ex parte Andrus, No. WR-84, 438-01, 2019 WL 622783, at *2 (Tex. Crim. App. Feb. 13, 2019) ("However, applicant fails to meet his burden under Strickland v. Washington to show by a preponderance of the evidence that his counsel's representation fell below an objective standard of reasonableness and that there was a reasonable probability that the result of the proceedings would have been different, but for counsel's deficient performance." (citation omitted)). In other words, the state court's error in Andrus was failing to adequately demonstrate that it had conducted the required analysis. 140 S. Ct. at 1887 ("It is unclear whether the Court of Criminal Appeals considered Strickland prejudice at all. Its one-sentence denial of Andrus' Strickland claim does not conclusively reveal whether it determined that Andrus had failed to demonstrate deficient performance under Strickland's first prong, that Andrus had failed to demonstrate prejudice under Strickland's second prong, or that

13

Andrus had failed to satisfy both prongs of Strickland." (citation omitted)).  Here, unlike in Andrus, the SJC explicitly and comprehensively discussed why the June 22, 2009 phone call would not have been a factor in the jury's voluntariness analysis.[15]  See Colon, 133 N.E.3d at 318–19.  Accordingly, while Colon can reasonably disagree with the SJC's substantive decision (i.e., that evidence of the call would not have impacted the jury's assessment), he cannot plausibly contend that the SJC failed to conduct the required analysis.

In Williams, the Supreme Court found that the Virginia Supreme Court had (1) misconstrued the interplay of two Supreme Court cases, Strickland and Lockhart v. Fretwell, and (2) failed to consider all the evidence in the record.  See 529 U.S. at 397–98.  Here, the SJC identified the correct ineffective assistance of counsel standard—which, as noted above, was more favorable to Colon than Strickland—considered the totality of the evidence in the record, and concluded that Colon's claim was without merit.

Accordingly, because Andrus and Williams are factually distinguishable, the SJC's decision here was not "contrary to clearly established federal law."  See Bebo, 906 F.3d at 134 ("To be deemed 'contrary to clearly established federal law,' a state court decision must 'announce[ ] a rule of law that directly contradicts existing Supreme Court precedent or . . . reach[ ] a different result than the Supreme Court on materially indistinguishable facts.'"

---

[15] Even if the SJC's decision were at odds with Andrus, to the extent Colon believes Andrus broke new ground, he cannot rely on it to attack the SJC's 2019 opinion because it was not decided until 2020.  See Williams, 529 U.S. at 412 (noting that, under AEDPA, the phrase "'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions *as of the time of the relevant state-court decision*." (emphasis added)); see also Greene v. Fisher, 565 U.S. 34, 38 (2011) ("As we explained, § 2254(d)(1) requires federal courts to focu[s] on what a state court knew and did, and to measure state-court decisions against this Court's precedents as of the time the state court renders its decision." (alteration in original) (citations and internal quotation marks omitted)).

(quoting Cronin, 783 F.3d at 50)).  Further, the SJC's decision was not an unreasonable application of federal law as set forth in Strickland, Andrus, Williams, (or any other Supreme Court case that the Court is aware of) because the SJC identified the correct standard and reasonably applied it to the facts at hand, noting with specificity why, in light of the substantial record evidence suggesting that Colon's June 23, 2009 confession was voluntary, evidence concerning the June 22, 2009 call would not have affected the jury's voluntariness assessment.[16]  See Colon, 133 N.E.3d at 318–19.  In sum, nothing in the SJC's decision suggests that it misapprehended or misapplied Supreme Court precedent concerning ineffective assistance of counsel.  To the contrary, the SJC's decision demonstrates that it thoughtfully considered Colon's claim and, after explaining why, denied it on the merits.

Perhaps in recognition of the significant deference afforded to state court decisions under § 2254(d), Colon attempts to attack the correctness, not the reasonableness, of the SJC's decision.  For instance, he argues that because he confessed soon after his phone call with Giana, the jury likely would have considered his confession involuntary had Colon's lawyer presented evidence about the phone call.  See [ECF No. 1-1 at 7 ("Especially where the confession came on the heels of this phone call, there is a reasonable probability that had the jury known about the phone call, they would have decided that the subsequent confession was involuntary.")].  It is

---

[16] Colon seems to argue that because the SJC did not use the words "the call would not have been a meaningful factor in the jury's voluntariness decision," it did not conduct the required analysis.  See [ECF No. 12 at 7–8 ("After acknowledging the petitioner's argument that the phone-call evidence 'would have been a real factor in the jury's voluntariness decision, had it been developed at trial,' the SJC did not go on to decide what impact that evidence would have had on the jury's deliberations.")].  The SJC is not, however, required to use formulaic phrasing or utter a prescribed set of magic words.  Further, after quoting Colon's argument, the SJC wrote that it "d[id] not agree," Colon, 133 N.E.3d at 318, which clearly indicates that it rejected Colon's position and therefore concluded that the call would not have been a real factor in the jury's voluntariness calculus.

not, however, this Court's role to assess whether a state court determination was correct or to substitute its judgment for that of the state court.  See Bebo, 906 F.3d at 134.  Rather, the Court can grant habeas relief only where a state court decision goes beyond arguable incorrectness and is 'contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  Id. (quoting 28 U.S.C. § 2254(d)(1)).  Because Colon has failed to demonstrate that the SJC's decision fits into that category, his ineffective assistance of counsel argument fails.

### V.   CONCLUSION

For the reasons stated above, Colon's petition, [ECF No. 1], is DENIED.

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner.  Rules Governing Section 2254 Cases, R. 11(a).  The Court DECLINES to grant a certificate of appealability to Colon.

**SO ORDERED.**

August 31, 2021                                                       /s/ Allison D. Burroughs
                                                                                  ALLISON D. BURROUGHS
                                                                                  U.S. DISTRICT JUDGE